In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00098-CV


______________________________





IN RE:


DAVIE HARRISON, SR.








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPI NION


 Davie Harrison, Sr., has filed a petition for writ of mandamus requesting this Court to order
the Honorable John F. Miller, presiding judge of the 102nd Judicial District Court in Bowie County,
to issue an order that Harrison be immediately released on mandatory supervision. We deny
Harrison's petition because an application for a writ of habeas corpus is the appropriate remedy for
post-conviction relief.

 Harrison was convicted in 1994 of burglary and is currently incarcerated on that charge. 
According to Harrison, he is eligible for release under mandatory supervision. Harrison alleges he
was illegally and arbitrarily denied release by the Amarillo Panel of the Texas Board of Pardons and
Paroles. Harrison also alleges that he was deprived of adequate notice of the hearing and that his
due-process rights were violated. A document titled "Inmate Request to Official" is attached to
Harrison's petition which states Harrison may have been denied mandatory supervision due to a prior
3g offense. (1) Harrison alleges he filed in Miller's court an application for a writ of habeas corpus that
Miller has either denied or refused to rule on. Harrison requests that this Court order Miller to order
Harrison's release. (2)

 In Texas, the sole method for a collateral attack on a felony conviction is through an
application for a writ of habeas corpus. The procedure set forth in Article 11.07 of the Texas Code
of Criminal Procedure is the exclusive post-conviction judicial remedy available when the conviction
is final and the applicant is confined by virtue of his or her felony conviction. See Ex parte Adams,
768 S.W.2d 281, 287 (Tex. Crim. App. 1989); McBride v. State, 114 S.W.3d 556, 557 (Tex.
App.--Austin 2002, no pet.); see also Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon Supp. 2008);
cf. Board of Pardons & Paroles ex rel. Keene v. Court of Appeals for the Eighth Dist., 910 S.W.2d
481, 483 (Tex. Crim. App. 1995). Mandamus is an extreme remedy and will not be granted unless
no other remedy at law exists. Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex.
1985). To the extent Harrison's complaints could be considered an application for a writ of habeas
corpus, this Court has no original habeas corpus jurisdiction in post-conviction criminal matters. 
See  Tex.  Gov't  Code  Ann.  §  22.221;  Dodson  v.  State,  988  S.W.2d  833,  835  (Tex.
App.--San Antonio 1999, no pet.). Because an application for a writ of habeas corpus is the
appropriate vehicle to bring this collateral attack, Harrison is not entitled to a writ of mandamus.

 We deny Harrison's petition for writ of mandamus. 



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 9, 2008

Date Decided: September 10, 2008
1. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g (Vernon Supp. 2008).
2. To the extent Harrison's petition could be interpreted as requesting a writ of mandamus be
issued against the parole board, we lack jurisdiction to issue such relief. This Court has no
mandamus jurisdiction over the Texas Board of Pardons and Paroles. See Tex. Gov't Code Ann.
§ 22.221 (Vernon 2004). 



0;                                             

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 30298-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Terry Louis Miller pled guilty to aggravated assault. The trial court made a deadly weapon
finding and sentenced him to forty years' imprisonment. Miller was also convicted, during the course
of the proceeding, of the offense of possession of a firearm by a felon, which is also before this Court
on appeal (Miller v. State, No. 06-03-00180-CR) and is decided by separate opinion.
            On appeal, Miller argues that, before Miller pled guilty, the trial court (1) did not properly
admonish him about the effect of a deadly weapon allegation and (2) erroneously informed him he
could apply for community supervision. We affirm.
Deadly Weapon Admonishment
            Miller first argues the trial court did not follow the requirements of Tex. Code Crim. Proc.
Ann. art. 26.13(a) (Vernon Supp. 2004), because it failed to admonish Miller that, if he was found
guilty of an offense, with a deadly weapon finding, he would be required to serve half of any
sentence before becoming eligible for parole. Article 26.13 contains no requirement for a trial court
to so admonish a defendant, and counsel has directed this Court to no such requirement. See Tex.
Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2004). To the contrary, although defendants are
often concerned about parole eligibility, it remains only a collateral consequence of the entry of the
plea. See Ex parte Young, 644 S.W.2d 3, 4–5 (Tex. Crim. App. 1983), overruled on other grounds, 
Ex parte Evans, 690 S.W.2d 274 (Tex. Crim. App. 1985). In the absence of any authority requiring
a court to give such an admonishment, we will not engraft that requirement onto the Code. We
overrule this contention of error.
Community Supervision Application
            Miller next contends that the trial court erred by suggesting to him he may wish to file an
application for a probated sentence when it was clear he would not be entitled to community
supervision, and that he was thereby misled to his detriment. Miller had clearly decided to plead
guilty—and had actually done so—before the court raised the issue regarding community
supervision. The following exchanges took place before the trial court raised the issue of community
supervision:
THE COURT: Mr. Miller, I understand that you wish to plead guilty
in 30,298-A to aggravated assault, repetition of a felony. Is that what you want to
do?
 
[Defendant]: Yes, sir.
 
THE COURT: In 30,600-A, I understand you wish to plead guilty to
unlawful possession of a firearm by a felon. Is that what you want to do?
 
[Defendant]: Yes, sir.
 
. . . .
 
THE COURT: Who made the decision to plead guilty in this case?
 
[Defendant]: I did, sir.
 
THE COURT: And are you guilty of each of these offenses?
 
[Defendant]: Yes, sir.
 
. . . .
 
THE COURT: . . . . So you're guilty of aggravated assault, repetition
of a felony. You're also guilty of unlawful possession of a firearm by a felon; is that
correct?

                                    [Defendant]: Right. Yes, sir.
                        . . . .

                                    THE COURT: What are you doing in court here today?

                                    [Defendant]: I'm pleading guilty to offenses, crimes that I've committed.

Only later—after (1) the above exchanges took place, (2) the trial court admonished Miller, orally
and in writing, regarding the range of punishment and the rights he was giving up by pleading guilty,
and (3) the court, by thoroughly questioning Miller, established he was voluntarily pleading
guilty—did the court bring up community supervision.
THE COURT: Are you going to make a request for probation? I'm
not saying that you should. Are you going to make a request for probation? 
 
. . . .
 
I mean, as I understand the law, somebody files an application for probation,
they're theoretically eligible for probation, they're theoretically eligible from the
Court no matter what their history is. 
 
. . . .
 
Now, Mr. Miller, just before [sic] you filed a request for probation doesn't
mean that I'm going to give you probation.
 
[Defendant]: I understand that, your Honor.
 
THE COURT: It will be totally up to me; do you understand that?
 
[Defendant]: Yes, sir.
. . . .

                                    THE COURT: Do you still wish to plead guilty . . . ?

                                    [Defendant]: Yes, sir.

            Miller argues the trial court should have admonished him that he was not eligible for
community supervision because of the deadly weapon finding under Tex. Code Crim. Proc. Ann.
art. 42.12, § 3g (Vernon Supp. 2004). Miller argues that, as in Tabora v. State, 14 S.W.3d 332 (Tex.
App.—Houston [14th Dist.] 2000, no pet.), we should find the trial court gave him inaccurate
information about the availability of community supervision, thus effectively leaving him unaware
of the real consequences of his plea, to his detriment. This ignores the context of the proceeding
which reveals Miller had decided to plead guilty to both charges—and had actually done so—before
the trial court raised the issue.


 It was also quite clear that the trial court admonished Miller of the
court's discretion to assess any sentence within the range of punishment, which for this case was five
to ninety-nine years or life imprisonment, plus a possible $10,000.00 fine, and that, even if Miller
applied for community supervision, the court was not required to order it. Regardless of whether
there was error


 in the trial court's suggestion of, and willingness to receive, an application for
community supervision, Miller has shown no harm from it. It was Miller's burden to establish he
was harmed by relying on any such incorrect admonishment. Harrison v. State, 688 S.W.2d 497,
499 (Tex. Crim. App. 1985); Tabora, 14 S.W.3d at 335. There was no such reliance or harm. Under
these circumstances, we overrule this contention of error.
            We affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          January 20, 2004
Date Decided:             February 27, 2004

Do Not Publish