Opinion issued June 10, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00976-CR

———————————

Darrell Pickett II, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 185th District
Court

Harris County, Texas



Trial
Court Case No. 1145172

 



 

MEMORANDUM OPINION

          Appellant
Darrell Pickett II pleaded guilty to committing aggravated robbery with a
deadly weapon, and the jury sentenced him to 50 years’ confinement in
prison.  See Tex. Penal Code Ann.
§ 29.03 (Vernon 2003).  After an
evidentiary hearing, the trial court denied Pickett’s motion for new trial, in
which he argued that he had received ineffective assistance of counsel.  The motion for new trial also presented the
arguments Pickett now urges on appeal: the trial court erred and violated his
Fifth Amendment due process rights by failing to admonish him about the
consequences of his plea in accordance with article 26.13 of the Code of
Criminal Procedure.

          The
trial court clearly erred by failing to give the statutorily required
admonishments.  But because we conclude
that Pickett was not harmed by the trial court’s failure to give the statutory
admonishments, we affirm.

Background

          Before
trial, Pickett indicated to the trial court that he intended to plead
guilty.  However, at the pretrial
conference, he indicated that he intended to plead not guilty.  Therefore, the parties conducted voir dire
for the purpose of selecting a jury to determine both the question of his guilt
or innocence and, if necessary, punishment.

During voir dire, the trial court
instructed the venire panel on the different types of theft offenses up to and
including aggravated robbery.  The venire
panel was advised that the State had the burden to prove Pickett’s guilt beyond
a reasonable doubt.  The trial court also
addressed the panel regarding the punishment range, stating the following:  

Aggravated
robbery is a first degree felony.  It’s
in there with murder, aggravated sexual assault of a child.  All of those are first degree felonies.

 

They
carry a standard range of punishment of no less than 5 years nor more than
99 years or life in the Texas Department of Criminal Justice and up to a
$10,000 fine.

 

The
law also says that if a jury finds that a person . . . should receive a
sentence of 10 years or less, so between 5 and 10, and that this person has
never been convicted of a felony in this state or any other state, the jury can
give that person a probated sentence, which means they don’t go to prison.  They’re on probation under court
supervision.  

 

.
. . .

 

Probation
is not automatic.  It is entirely up to
the jury.  Okay? So, it only becomes an
issue if the sentence is 10 years or less and . . . if you find the person’s
never been convicted of a felony in this or any other state, all right?

 

The trial court asked the venire members if they
could consider the full range of punishment. 
In so doing, the trial court reiterated the full punishment range no
fewer than five times.  Pickett’s trial
counsel also mentioned the punishment range at least twice during voir
dire.  

After the jury was seated—and to
the surprise of the trial court—Pickett pleaded guilty to the charges against
him, and the trial proceeded on punishment only.  The jury sentenced Pickett to 50 years in prison.  After his conviction, Pickett filed a motion
for new trial based on ineffective assistance of counsel, in which he alleged that his attorney abandoned him on
the day of trial, was unprepared for trial, gave him erroneous advice about the
probable punishment he would receive, and failed to inform him of the
consequences of an affirmative deadly weapon finding with respect to his eligibility
for parole.  In addition, Pickett alleged
that his guilty plea was involuntary because his trial counsel misinformed him,
threatened him, and improperly induced him to plead guilty.  

The trial court held an evidentiary
hearing on the motion for new trial. 
Pickett testified that his trial counsel visited him only once during
the nine months he spent in jail awaiting trial.  He testified that he met with his trial
counsel, his mother, and his aunt on the morning of his trial.  According to Pickett, his trial counsel told
him that if he pleaded guilty he would get probation but that if he pleaded not
guilty he would be convicted and sentenced to life in prison.  Pickett testified he felt abandoned by his
trial counsel, who told him these were the only choices Pickett had, that he
was not prepared for trial, and that he could not obtain a continuance.  Pickett said that he was innocent but his
trial counsel called him a liar and coerced him into pleading guilty.  Pickett testified that his trial counsel
instructed him to act guilty but remorseful and to seek mercy from the jury.  The trial court questioned Pickett, who acknowledged
that the trial court had previously explained the range of punishment and
parole eligibility to him.  During the
punishment hearing, Pickett admitted having lied to police officers and his
mother about this offense and having violated the terms of probation that was
previously imposed for an unrelated theft.

Pickett’s mother and aunt testified
at the hearing on the motion for new trial, corroborating Pickett’s allegations
about what transpired when they met with his trial counsel before trial.  Pickett and his mother acknowledged that his
trial counsel had represented him in three or four prior criminal matters,
beginning in 2005, in which he also pleaded guilty.  For example, Pickett testified that he
pleaded guilty to misdemeanor theft in 2005, on his counsel’s advice, despite
his innocence. 

          Pickett’s
trial counsel testified that he spoke with Pickett by telephone on 20 to 50
occasions, during which Pickett wanted to discuss only bond and his release. He
also said that Pickett refused to contact him when he was released on
bond.  Trial counsel denied coercing
Pickett into pleading guilty and saying that he was not ready for trial.  He denied calling Pickett a liar, telling him
that he would receive life in prison on a “not guilty” plea, or promising
Pickett that he would get probation.  He
acknowledged that he did not discuss parole with Pickett.  He testified that Pickett denied stabbing the
complainant, but he said that Pickett told him he was present at the time of
the charged offense.  Pickett’s trial
counsel testified that he explained to Pickett that he could still be found
responsible for the charged offense under the law of parties.

          The
trial court denied Pickett’s motion for new trial, specifically finding that
Pickett and his witnesses were not “credible as to the situation that went on,”
and ruling as follows: 

The
Court finds that [Pickett’s trial counsel]—that on the day of trial, [Pickett’s
trial counsel] advised the Court that his client intended, after the client had
already indicated both to the Court and to [his trial counsel] that he was
going to plead guilty and ask the jury to assess punishment, that he then
changed his mind and a jury was selected as such, in regards to both the guilt
and innocence of the defendant and punishment. 
That at the time the defendant was asked what his plea was, in front of
the jury, he indicated that he was going to plead guilty.

 

Based
on all the conversations this Court had with the defendant, both before, during
and after he entered that plea, the Court finds that Mr. Pickett freely and
voluntarily entered a plea of guilty and that [Pickett’s trial counsel’s]
assistance during the trial is—his representation was effective.

 

MOTION FOR
NEW TRIAL

          On
appeal, Pickett argues that the trial court erred by failing to give him the
statutory admonishments and violated his due process rights by (1) failing to inform
him of the consequences of his plea and (2) failing to determine that his plea
was made knowingly, intelligently, and voluntarily.  Because Pickett raised these issues in a
motion for new trial, we analyze his issues as a challenge to the denial of his
motion for new trial.  See Starz v. State, 309 S.W.3d 110, 2009
WL 3152115, at *6 (Tex. App.—Houston [1st Dist.] 2009, pets. ref’d) (analyzing
ineffective-assistance-of-counsel issue as challenge to denial of motion for
new trial).

In Charles v. State, the Court of Criminal Appeals explained the
standard for reviewing a trial court’s ruling on a motion for new trial:

An appellate court reviews a
trial court’s denial of a motion for new trial under the “abuse of discretion”
standard.  We do not substitute our
judgment for that of the trial court, but rather we decide whether the trial
court’s decision was arbitrary or unreasonable. 
We must view the evidence in the light most favorable to the trial
court’s ruling and presume that all reasonable factual findings that could have
been made against the losing party were made against that losing party. Thus, a
trial court abuses its discretion in denying a motion for new trial only when
no reasonable view of the record could support the trial court’s ruling.         



Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)
(citations omitted); see also State v.
Herndon, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007) (“A trial judge has
discretion to grant or deny a motion for new trial ‘in the interest of
justice,’ but ‘justice’ means in accordance with the law.”).  This deferential standard of review applies
even to the trial court’s resolution of the historical facts from conflicting
sources.  Manzi v. State, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002).

Statutory Admonishments

          In
his first issue, Pickett complains that the trial court failed to admonish him
as required by the Texas Code of Criminal Procedure.  Prior to accepting a guilty plea, a trial
court must admonish a defendant about the punishment range attached to an
offense and the immigration consequences of a guilty plea if the defendant is
not a United States citizen.  Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2009).  The record reflects that the trial court did
not administer the required admonishments. 
The State concedes that the trial court did not administer the required
admonishments. 
The trial court clearly erred by failing to give the statutory
admonishments.  See Burnett v.
State, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002) (holding that trial court clearly erred by wholly failing to admonish
defendant as to applicable range of punishment).  

“Failure to admonish a defendant on the direct consequences of his guilty
plea is statutory rather than constitutional error.”  Burnett, 88 S.W.3d
at 637; see Aguirre-Mata v. State,
992 S.W.2d 495, 499 (Tex. Crim. App. 1999) (holding that trial court’s error in
failing to show on record that it admonished guilty-pleading defendant is
subject to non-constitutional harm analysis under Tex. R. App. P. 44.2(b)). 
Thus, to determine if the trial court abused its discretion in denying
Pickett’s motion for new trial so as to require reversal, we must also consider
whether the trial court’s failure to give the statutory admonishments affected
his substantial rights.  Tex. R. App. P. 44.2(b) (“Any other [i.e.,
non-constitutional] error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded.”); see also Herndon, 215
S.W.3d at 908 (“Trial courts should not grant a new trial if the defendant’s
substantial rights were not affected.”).

          “Neither
the appellant nor the State have any formal burden to show harm or harmlessness
under Rule 44.2(b).”  Burnett, 88 S.W.3d at 638.  Rather, an appellate court “must
independently examine the record for indications that a defendant was or was
not aware of the consequences of his plea and whether he was misled or harmed
by the trial court’s failure to admonish him of the punishment range.”  Id.  “Reviewing courts must examine the entire
record to determine whether, on its face, anything in that record suggests that
a defendant did not know the consequences of his plea.”  Id.  In this context, a trial court’s failure to
admonish a defendant will be harmless if the appellate court’s review of the
record as a whole gives “fair assurance that the defendant’s decision to plead
guilty would not have changed had the court admonished him.”  Anderson
v. State, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006).  

Punishment Range

Pickett argues that the trial court
erred by failing to admonish him concerning the range of punishment.  The record shows that the trial court
explained the full range of punishment at least six times during voir dire, for
which Pickett was present.  Pickett’s
trial counsel also explained the full range of punishment during voir dire and
before trial, according to his testimony at the hearing on Pickett’s motion for
new trial.  Pickett repeatedly testified
that his trial counsel told him he would get “probation” if he pleaded guilty
and “life” in prison if he pleaded not guilty. 
Indeed, the punishment range for the charged offense included both the
possibility of probation and the possibility of life in prison.  Pickett acknowledged that the trial court had
previously explained the range of punishment and parole eligibility to him, and
during the punishment phase, Pickett testified that he understood the range of
punishment.  Having reviewed the record,
we find nothing in it that suggests that Pickett did not know the punishment
consequences of his guilty plea.  See Burnett,
88 S.W.3d at 638.  To the contrary, the
record as a whole gives fair assurance that Pickett’s decision to plead guilty
would not have changed had the court admonished him.  See
Anderson, 182 S.W.3d at 919.

Parole Eligibility

Pickett further argues that he
would not have pleaded guilty had he known that a guilty plea would render him
ineligible for parole until after he had served at least one-half of his
sentence.  When a defendant pleads
guilty, a trial court need only advise him of the direct, not the collateral,
consequences of his plea.  See Ex parte Morrow, 952 S.W.2d 530, 536
(Tex. Crim. App. 1997) (“[W]hen a defendant is fully advised of the direct
consequences of [his] plea, [his] ignorance of a collateral consequence does
not render the plea involuntary.”); see
also Brady v. United States, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)
(holding that in the absence of threats, misrepresentations, or improper
promises, a guilty plea is voluntary if defendant is advised of all direct
consequences of plea); Mitschke v. State,
129 S.W.3d 130, 135 (Tex. Crim. App. 2004) (holding that consequence is direct
if it is definite and largely or completely automatic).  “Parole eligibility is a collateral
consequence of a defendant’s guilty plea.” 
Bell v. State, 256 S.W.3d 465,
469 (Tex. App.—Waco 2008, no pet.) (citing Ex
parte Young, 644 S.W.2d 3, 4 (Tex. Crim. App. 1983), overruled on other grounds by Ex parte Evans, 690 S.W.2d 274, 279
(Tex. Crim. App. 1985)); see also Hill v.
Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (“We have never held
that the United States Constitution requires the State to furnish a defendant
with information about parole eligibility in order for the defendant’s plea of
guilty to be voluntary.”).

During the hearing on his motion for
new trial, Pickett acknowledged that the trial court had previously admonished
him on the parole consequences of a guilty plea in this case.  Because a trial court does not err by
declining to inform a defendant of the collateral consequences of his plea—and, in any event, the trial court did inform
Pickett of his parole eligibility—we conclude that Pickett’s substantial rights were not affected.

Immigration
Consequences

Pickett argues that the trial
court’s error in failing to admonish him of possible deportation consequences
of his guilty plea warrants reversal. 
When the record shows a defendant to be a United States citizen, the
trial court’s failure to admonish him on the immigration consequences of his
guilty plea is harmless error; however, when the record shows a defendant is
not a citizen at the time of his guilty plea, the trial court’s error in
failing to admonish him is not harmless. 
Compare Cain v. State, 947
S.W.2d 262, 264 (Tex. Crim. App. 1997) (superseded
on other grounds by Tex. R. App. P.
44.2) (harmless), with Carranza v. State,
980 S.W.2d 653, 656 (Tex. Crim. App. 1998) (harmful).  If a defendant’s citizenship or immigration
status is not clear, an appellate court should draw reasonable inferences from
facts in the record when conducting a harm analysis.  VanNortrick
v. State, 227 S.W.3d 706, 710–11 (Tex. Crim. App. 2007) (“We do not
foreclose the possibility of a finding on citizenship in every case where
conclusive proof is unavailable.”).  In
determining whether the trial court’s failure to admonish the appellant
affected his substantial rights, we must determine: (1) whether the appellant
knew the consequences of his plea; (2) the strength of the evidence of the
appellant’s guilt, and (3) the appellant’s citizenship and immigration status.  Id.
at 712.

Pickett was present during voir
dire when the direct consequences of his plea were discussed, he testified at
the hearing on his motion for new trial that the trial court previously
explained the consequences of his plea, and during punishment, he testified
that he understood the punishment range. 
As to guilt, Pickett’s trial counsel testified that Pickett had given a
videotaped confession, which he determined did not warrant a motion to
suppress.  Pickett does not contend that
he is not a United States citizen. 
Moreover, as to his immigration status, Pickett’s bail bond papers
suggest he is a United States citizen: “Citizen status: Y.”  Drawing reasonable inferences from these
facts, which includes an inference that Pickett is a United States citizen, we
conclude that the trial court’s failure to admonish him on the immigration
consequences of his guilty plea did not affect his substantial rights and was
harmless.  See Cain, 947 S.W.2d at 264.

Mental Competence

Finally, Pickett argues that by
failing to admonish him, the trial court failed to ensure that he was mentally
competent and that his plea was entered freely and voluntarily.  “On the question of appellant’s mental competency,
unless an issue is made of an accused’s present insanity or mental competency
at the time of the plea, the court need not make inquiry into appellant’s
mental competency, and it is not error to accept appellant’s guilty plea.”  Sims v.
State, 783 S.W.2d 786, 788 (Tex. App.—Houston [1st Dist.] 1990, no pet.); accord Manoy v. State, 7 S.W.3d 771, 777–78 (Tex. App.—Tyler 1999, no
pet.); Hall v. State, 935 S.W.2d 852,
855–56 (Tex. App.—San Antonio 1996, no pet.).

Pickett did not raise the issue of
his competency when he pleaded guilty or in his motion for new trial.  At the hearing on his motion for new trial,
Pickett presented no evidence to support his contention on appeal that he was
not competent at the time of his plea. 
Because Pickett’s competence was not raised, the trial court was not
required to inquire into Pickett’s mental competence and did not err by
accepting his guilty plea.  See Sims,
783 S.W.2d at 788.  

Pickett also argues that his plea
was not free or voluntary.  Although
Pickett testified that his attorney was unprepared and coerced him into
pleading guilty, Pickett’s trial counsel also testified, rebutting those
accusations.  As the factfinder on the
motion for new trial, the trial court was the sole judge of the credibility of
the witnesses.  See Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); Messer v. State, 757 S.W.2d 820, 824–25
(Tex. App.—Houston [1st Dist.] 1988, pet. ref’d).  The trial court specifically found that
Pickett’s trial counsel was credible but that Pickett was not.  Moreover, as the trial court stated, it had
an opportunity to observe and interact with Pickett before, during, and after
accepting his guilty plea.  Based on
those observations and interactions, the trial court stated in its jury charge
on punishment that it found Pickett to be mentally competent and his plea
freely and voluntarily given.  Based on
all the conversations the trial court had with Pickett, the trial court
concluded that Pickett freely and voluntarily entered a plea of guilty, and we
hold that the trial court did not err in so doing.

Having considered and rejected each
of Pickett’s arguments, we conclude that the trial court’s failure to give the
statutory admonishments did not affect his substantial rights.  See
Tex. R. App. P. 44.2(b).  We also conclude that the trial court did not
abuse its discretion by denying Pickett’s motion for new trial as to the trial
court’s failure to give the statutory admonishments.  See
Charles, 146 S.W.3d at 208.  We
overrule Pickett’s first issue.

Due Process

          In
his second issue, Pickett argues that the trial court violated his due process
rights by failing to admonish him of the consequences of his plea and by
failing to determine that his plea was made knowingly, intelligently, and
voluntarily.  In addition, he argues that
his trial counsel coerced him to enter a guilty plea.  

Due process requires that a guilty
plea be entered knowingly, intelligently, and voluntarily.  Brady,
397 U.S. at 748, 90 S. Ct. at 1468–69; Kniatt
v. State, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing Boykin v. Alabama, 395 U.S. 238, 243, 89
S. Ct. 1709, 1712 (1969)).  “A guilty
plea constitutes a waiver of three constitutional rights: the right to a jury
trial, the right to confront one’s accusers, and the right not to incriminate
oneself.”  Kniatt, 206 S.W.3d at 664 (citing Boykin, 395 U.S. at 243, 89 S. Ct. at 1712).  A defendant’s plea is knowing and voluntary
if the defendant understands the meaning and consequences of his guilty
plea.  Aguirre-Mata v. State, 125 S.W.3d 473, 475 (Tex. Crim. App. 2003).  A guilty plea must express the defendant’s
free will and must not be induced by threats, misrepresentations, or improper
promises.  Brady, 397 U.S. at 755, 90 S. Ct. at 1472; Kniatt, 206 S.W.3d at 664.

          Pickett
contends reversal is required under Boykin
v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969), without a
showing of harm because there is no affirmative showing that his plea was made
intelligently and voluntarily.  The Court
of Criminal Appeals has squarely rejected this contention.  See Mendez
v. State, 138 S.W.3d 334, 338 (Tex. Crim. App. 2004) (“[Q]uestions
regarding the voluntariness of a plea do not defy harm analysis and, therefore,
do not involve fundamental constitutional systemic requirements.”).

          Pickett
was present during voir dire, during which the trial court explained theft
offenses up to and including aggravated robbery, the consequence of a finding
of guilt, and the applicable punishment range. 
Nothing in the record indicates that Pickett did not understand the
charges against him or the consequences of his plea; to the contrary, Pickett’s
presence at voir dire and his testimony at the hearing on his motion for new
trial show that he did understand the meaning and consequences of his guilty
plea.  See Aguirre-Mata, 125 S.W.3d at 475.  Pickett does not argue that he did not
understand the charges against him or the consequences of his plea.  Rather, Pickett argues that he did not know
that if he pleaded guilty he would not be eligible for parole until he served
at least half of his sentence.  As we
have explained, this is not a direct consequence of his guilty plea and, in any
event, Pickett acknowledged that the trial court, in fact, explained this to
him.  See
Brady, 397 U.S. at 755, 90 S. Ct. at 1472; Ex parte Morrow, 952 S.W.2d 
at 536; Bell, 256 S.W.3d at
469.  Pickett also reiterates his
argument that his trial counsel was unprepared and coerced him into pleading
guilty by promising he would receive probation. 
The trial court, as fact-finder, rejected this controverted version of
the facts and determined that Pickett freely and voluntarily entered his guilty
plea.  The record here shows that Pickett
entered his plea knowingly, intelligently, and voluntarily.  See
Lewis, 911 S.W.2d at 7; Messer,
757 S.W.2d at 824–25.  Therefore, we
conclude that the trial court did not abuse its discretion by denying Pickett’s
motion for new trial as to these arguments. 
See Charles, 146 S.W.3d at
208.  

We overrule Pickett’s second issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                          Michael
Massengale

                                                          Justice


 

Panel consists of Justices Jennings, Alcala, and
Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).