IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NOS. AP-76,439 and AP-74,185






Ex parte MAX MOUSSAZADEH, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS

FROM HARRIS COUNTY






Keller, P.J., filed a concurring opinion. 

 In overruling Ex parte Evans, (1) the Court creates a new rule of constitutional law. Under
Teague, with some exceptions, federal courts may not announce or apply new rules of constitutional
law on collateral review. (2) The states are not bound by the Teague rule and may afford retroactive
effect on collateral review in situations not allowed under Teague. (3) Nevertheless, with respect to
the new Confrontation Clause holding articulated in Crawford v. Washington, (4) we applied the rule
in Teague to bar retroactive application on habeas corpus. (5) The Court does not conduct a
retroactivity analysis in this case, and I do not know its reason for making the new rule retroactive. 
Has the Court abandoned Teague altogether in favor of its own retroactivity analysis? Does it intend
to adhere to Teague, but with state-created exceptions? Do any exceptions--articulated in Teague
or state-created--apply in the present case? If the Court is going to overrule prior precedent on
habeas review, as it does here, I believe that it should clearly explain how this fits into our
retroactivity jurisprudence. 

 There is an easier way to resolve this case. During the plea colloquy, the trial judge was
prepared to make a deadly weapon finding, but the parties explained that the issue was to be left
open for the judge to determine at punishment, which would be assessed after applicant testified
against a co-defendant in accordance with the plea agreement. (6) This explanation was consistent with
the parties agreeing that applicant would have his chance, after cooperating with the State, to
persuade the trial judge to make his time "non-aggravated," i.e. subject to more generous parole-eligibility rules available to non-3g offenses. (7) But less than two weeks before the offense had been
committed, the law had changed to treat murder as an "aggravated" offense for parole-eligibility
purposes, regardless of whether there was a deadly-weapon finding. (8) In its findings of fact on
applicant's original habeas application, the habeas judge found that the prosecutor and the trial judge
ratified defense counsel's misinformation about parole eligibility "by attaching significance to the
deadly weapon finding." (9) The habeas judge recommended that applicant be granted a new trial. In our original opinion on applicant's habeas application, we declined to follow the habeas
judge's finding, and her ultimate recommendation, because it required "too many inferences stacked
upon each other" for the deferral of the deadly weapon issue "to support a finding that it was the
parties' clear intention that parole eligibility was an essential element of the plea bargain." (10) We
cited no authority for this "inference-stacking" holding, (11) and thus it does not appear to be based
upon an established rule that we would have to change. Moreover, with regard to the advice given
in Evans, we said in that case: 

No overt sanctioning of this advice by the judge or the prosecutor appears in the
record and it does not appear to have been a part of the plea bargain. We realize that
it is common for the parties to play the guessing game of parole eligibility in plea
negotiations. We decline, however, to elevate this common practice to the status of
an element of the plea bargain without some further indication from the record
evidencing that status. We conclude, then, that we are not dealing with a broken or
impossible plea bargain situation. (12)


Unlike in Evans, there was overt sanctioning of the attorney's advice by the judge and the prosecutor,
or at least the habeas court could so rationally conclude, as it has done. Thus, we simply
misanalyzed the issue under Evans, and it is appropriate for us to reconsider the issue now. 

 Further, since our original opinion in this case, we have decided Hooper, where we indicated
that inference stacking was not necessarily irrational and that we should focus, not on whether
inferences are being stacked, but simply on the rationality of the inferences in addressing the
sufficiency of the evidence to support a conviction. (13)

 Finally, I would not hold, as the Court appears to do, (14) that the simple failure to convey
information about parole eligibility renders a guilty plea involuntary. We need not address whether
counsel has an obligation to convey information about the parole consequences of a plea. In this
case, it is enough to hold that, if counsel does convey this type of information, he must do so
correctly. Here, the information was incorrect. 

 Although I agree that applicant is entitled to a new trial, I do not join the Court's opinion. 
I concur in the Court's judgment.

Filed: February 15, 2012

Publish
1. 690 S.W.2d 274 (Tex. Crim. App. 1985).
2. Teague v. Lane, 489 U.S. 288 (1989).
3. Danforth v. Minnesota, 552 U.S. 264 (2008); Ex parte Lave, 257 S.W.3d 235, 237 & n. 15
(Tex. Crim. App. 2008).
4. 541 U.S. 36 (2004).
5. Lave, 257 S.W.3d at 237; Ex parte Keith, 202 S.W.3d 767 (Tex. Crim. App. 2006).
6. See Ex parte Moussazadeh, 64 S.W.3d 404, 408 (Tex. Crim. App. 2001). 
7. See Tex. Code Crim. Proc. art. 42.12 § 3g; Tex. Gov't Code § 508.145(d).
8. Moussazadeh, 64 S.W.3d at 409.
9. The habeas judge also found that appellant would not have pleaded guilty absent the
misinformation.
10. Id. at 413.
11. See id.
12. 690 S.W.2d at 277.
13. Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). If it were necessary to
decide whether Hooper's pronouncement regarding inference stacking constituted a new rule under
Teague, I would hold that it does not, because, regardless of the scope of Texas's version of
Teague's proscription against announcing new constitutional rules of criminal procedure on habeas,
see Danforth, supra, such a proscription cannot apply to basic standards of habeas practice. 
Otherwise a court could never change its procedures or standards on habeas. 
14. "Both failure to provide correct information and providing incorrect information violate
that duty[.]" Court's opinion at 13.