

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. AP-76,439 and AP-74,185

### Ex parte MAX MOUSSAZADEH, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM HARRIS COUNTY

**KELLER, P.J., filed a concurring opinion.**

In overruling *Ex parte Evans*,[1] the Court creates a new rule of constitutional law. Under *Teague*, with some exceptions, federal courts may not announce or apply new rules of constitutional law on collateral review.[2] The states are not bound by the *Teague* rule and may afford retroactive effect on collateral review in situations not allowed under *Teague*.[3] Nevertheless, with respect to

---

[1] 690 S.W.2d 274 (Tex. Crim. App. 1985).

[2] *Teague v. Lane*, 489 U.S. 288 (1989).

[3] *Danforth v. Minnesota*, 552 U.S. 264 (2008); *Ex parte Lave*, 257 S.W.3d 235, 237 & n. 15 (Tex. Crim. App. 2008).

the new Confrontation Clause holding articulated in *Crawford v. Washington*,[4] we applied the rule in *Teague* to bar retroactive application on habeas corpus.[5] The Court does not conduct a retroactivity analysis in this case, and I do not know its reason for making the new rule retroactive. Has the Court abandoned *Teague* altogether in favor of its own retroactivity analysis? Does it intend to adhere to *Teague*, but with state-created exceptions? Do any exceptions—articulated in *Teague* or state-created—apply in the present case? If the Court is going to overrule prior precedent on habeas review, as it does here, I believe that it should clearly explain how this fits into our retroactivity jurisprudence.

There is an easier way to resolve this case. During the plea colloquy, the trial judge was prepared to make a deadly weapon finding, but the parties explained that the issue was to be left open for the judge to determine at punishment, which would be assessed after applicant testified against a co-defendant in accordance with the plea agreement.[6] This explanation was consistent with the parties agreeing that applicant would have his chance, after cooperating with the State, to persuade the trial judge to make his time "non-aggravated," i.e. subject to more generous parole-eligibility rules available to non-3g offenses.[7] But less than two weeks before the offense had been committed, the law had changed to treat murder as an "aggravated" offense for parole-eligibility

---

[4]  541 U.S. 36 (2004).

[5]  *Lave*, 257 S.W.3d at 237; *Ex parte Keith*, 202 S.W.3d 767 (Tex. Crim. App. 2006).

[6]  *See Ex parte Moussazadeh*, 64 S.W.3d 404, 408 (Tex. Crim. App. 2001).

[7]  *See* Tex. Code Crim. Proc. art. 42.12 § 3g; Tex. Gov't Code § 508.145(d).

purposes, regardless of whether there was a deadly-weapon finding.[8]  In its findings of fact on applicant's original habeas application, the habeas judge found that the prosecutor and the trial judge ratified defense counsel's misinformation about parole eligibility "by attaching significance to the deadly weapon finding."[9]  The habeas judge recommended that applicant be granted a new trial.

In our original opinion on applicant's habeas application, we declined to follow the habeas judge's finding, and her ultimate recommendation, because it required "too many inferences stacked upon each other" for the deferral of the deadly weapon issue "to support a finding that it was the parties' clear intention that parole eligibility was an essential element of the plea bargain."[10]  We cited no authority for this "inference-stacking" holding,[11] and thus it does not appear to be based upon an established rule that we would have to change.  Moreover, with regard to the advice given in *Evans*, we said in that case:

> No overt sanctioning of this advice by the judge or the prosecutor appears in the record and it does not appear to have been a part of the plea bargain. We realize that it is common for the parties to play the guessing game of parole eligibility in plea negotiations. We decline, however, to elevate this common practice to the status of an element of the plea bargain without some further indication from the record evidencing that status. We conclude, then, that we are not dealing with a broken or impossible plea bargain situation.[12]

Unlike in *Evans*, there was overt sanctioning of the attorney's advice by the judge and the prosecutor,

---

[8]  *Moussazadeh*, 64 S.W.3d at 409.

[9]  The habeas judge also found that appellant would not have pleaded guilty absent the misinformation.

[10]  *Id.* at 413.

[11]  *See id.*

[12]  690 S.W.2d at 277.

or at least the habeas court could so rationally conclude, as it has done. Thus, we simply misanalyzed the issue under *Evans*, and it is appropriate for us to reconsider the issue now.

Further, since our original opinion in this case, we have decided *Hooper*, where we indicated that inference stacking was not necessarily irrational and that we should focus, not on whether inferences are being stacked, but simply on the rationality of the inferences in addressing the sufficiency of the evidence to support a conviction.[13]

Finally, I would not hold, as the Court appears to do,[14] that the simple failure to convey information about parole eligibility renders a guilty plea involuntary. We need not address whether counsel has an obligation to convey information about the parole consequences of a plea. In this case, it is enough to hold that, if counsel does convey this type of information, he must do so correctly. Here, the information was incorrect.

Although I agree that applicant is entitled to a new trial, I do not join the Court's opinion.

I concur in the Court's judgment.

Filed: February 15, 2012
Publish

---

[13] *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). If it were necessary to decide whether Hooper's pronouncement regarding inference stacking constituted a new rule under *Teague*, I would hold that it does not, because, regardless of the scope of Texas's version of *Teague's* proscription against announcing new constitutional rules of criminal procedure on habeas, see *Danforth*, supra, such a proscription cannot apply to basic standards of habeas practice. Otherwise a court could never change its procedures or standards on habeas.

[14] "Both failure to provide correct information and providing incorrect information violate that duty[.]" Court's opinion at 13.