

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-79,040-02

### EX PARTE ALESHA DEAN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. W09-40844-J(B) IN CRIMINAL DISTRICT COURT NO. 3
### FROM DALLAS COUNTY

**YEARY, J., filed a concurring opinion.**

### CONCURRING OPINION

For the reasons expressed in Judge Keasler's dissenting opinion, I do not think the

Court can legitimately resolve this writ application in Applicant's favor based upon the state

of the law prior to *Moussazadeh III*.[1] In fact, the state of the law prior to *Moussazadeh III*

was the standard we set out in *Moussazadeh II*,[2] back in 2001. Under that standard, Applicant

would not be entitled to relief. The fact of the matter is that we cannot avoid resolving the

question we originally filed and set this cause to address: Should the holding in *Moussazadeh*

---

[1] *Ex parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012).

[2] *Ex parte Moussazadeh*, 64 S.W.3d 404 (Tex. Crim. App. 2001).

*III*—our much belated reconsideration, on our own motion, of *Moussazadeh II*—be applied retroactively? Because I would answer that question in favor of applying *Moussazadeh III* retroactively, I concur in the result.

When it comes to the retroactivity of new rules of constitutional law, "[t]his Court follows *Teague* [*v. Lane*, 489 U.S. 288 (1989),] as a general matter of state habeas practice[.]" *Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013) (citing *Ex parte Lave*, 257 S.W.3d 235 (Tex. Crim. App. 2008)). We are not constitutionally bound to follow the *Teague* formulation for determining retroactivity, however, and we have acknowledged that we may "deviate" from our general practice under appropriate circumstances. *Id.*; *Ex parte Maxwell*, 424 S.W.3d 66, 70-71 (Tex. Crim. App. 2014).[3] If ever there were a scenario that would "present us a reason to deviate[,]" *De Los Reyes*, 392 S.W.3d at 679, this is it.

In *Ex parte Young*, 644 S.W.2d 3, 4-5 (Tex. Crim. App. 1983), the Court proclaimed:

> Although parole eligibility is a collateral consequence of the entry of a plea of guilty and a defendant is not entitled to be informed of parole eligibility by the trial court, see *Rose v. State*, 465 S.W.2d 147 (Tex. Cr[im]. App. 1971), if the defendant is grossly misinformed about his parole eligibility date by his attorney, and the defendant relies upon that misinformation to the extent that it induces him to plead guilty or nolo contendere, his plea may be rendered involuntary.

We then concluded:

---

[3] *See Danforth v. Minnesota*, 552 U.S. 264, 266 (2008) ("The question in this case is whether *Teague* constrains the authority of state courts to give broader effect to new rules of criminal procedure than is required by that opinion. We have never suggested that it does, and now hold that it does not.").

> Petitioner has proved that which he has alleged, that is, that his trial counsel gave him incorrect and misleading advice regarding his parole eligibility date, thus rendering his plea involuntary. We find that the trial court's conclusion that petitioner was induced to enter pleas of guilty based on this gross misinformation is correct.

*Id*. at 5.

During the period between *Young* and *Moussazadeh III*, this Court made various pronouncements about what *else* a post-conviction habeas applicant must prove besides these bare facts in order to establish an unconstitutionally involuntary plea. First, we said such an applicant must prove that the misinformation was "an affirmative part of" a plea agreement. *Ex parte Evans*, 690 S.W.2d 274, 279 (Tex. Crim. App. 1985). What's more, we subsequently insisted, that proof must be formal in nature and cannot be inferential; it must be "founded upon the express terms of the written plea agreement itself, the formal record at the plea hearing, or the written or testimonial evidence submitted by *both* the prosecution and applicant in a habeas proceeding." *Moussazadeh II*, 64 S.W.3d at 412.

But in *Moussazadeh III*, the Court came full circle (with a nod to *Hill v. Lockhart*, 474 U.S. 52 (1985)). Once again the Court held that an applicant may be entitled to relief upon no more than a showing that his attorney gave him misinformation regarding parole eligibility and he would not have pled guilty absent such misinformation, but would have insisted on going to trial. 361 S.W.3d at 690-92. Moreover, we expressly held that "the question of whether parole eligibility forms an affirmative part or essential element of the plea agreement is not determinative of this Court's deficient-performance inquiry under

*Strickland* [*v. Washington*, 466 U.S. 668 (1984)—as applied to guilty plea proceedings in *Lockhart*]." *Id*. at 691.

Thus, *Moussazadeh III* does not represent a new rule for purposes of a retroactivity analysis so much as it represents a return to the old—an acknowledgment that what we originally declared the law to be, almost thirty-four years ago in *Young*, was accurate and should have been followed ever since. That this Court strayed from its holding in *Young* for so long is no reason that applicants who suffered manifest ineffective assistance of counsel during our own period of waywardness ought to be made to suffer. I would hold that Applicant is entitled to relief under the rule first laid out in *Young* and resurrected in *Moussazadeh III*.

For this reason, I respectfully concur.


FILED:        November 23, 2016
DO NOT PUBLISH